## UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| **KMOD FIT LLC, individually and on behalf of all others similarly situated,** | |
| **Plaintiff,** | **CASE NO. 20-12007** |
| **v.** | **CLASS ACTION** |
| **THE HANOVER AMERICAN INSURANCE COMPANY and THE HANOVER INSURANCE GROUP, INC.,** | **JURY TRIAL DEMANDED** |
| **Defendants.** | |

## INTRODUCTION

1.      Plaintiff KMOD FIT LLC (KMOD) is a North Carolina corporation that owns and operates two gyms: 20601 Torrence Chapel Road, Cornelius, North Carolina 28031 and 631 Brawley School Road, Suite 401, Mooresville, North Carolina 28117.

2.      In or about July 2019, to protect its physical business and its business income, KMOD purchased a commercial insurance policy issued by Defendants bearing policy number ZZ6 D620175 01 (the "Policy").[1]

3.      KMOD paid additional premiums to purchase "business interruption insurance," that is, coverage against losses and extra expenses arising from the interruption of the normal operation of its business, due to direct physical loss of or damage to covered property at the premises.

4.      As a result, KMOD reasonably expected that claims for loss of business

---

[1] Attached as Exhibit A.

income and extra expenses arising from the physical inability to use its insured premises would be paid under this coverage unless specifically and unambiguously excluded.

5.      The Business Income and Extra Expense coverage pays for three types of loss. Specifically, this coverage protected KMOD against the actual loss of business income due to a suspension of KMOD's operations.

6.      Along with this business income coverage, KMOD also had in effect a "Silver Property Broadening Endorsement" and the "Emergency Event Management" endorsement under which Defendants promised to pay necessary expenses arising from the suspension of KMOD's operations, and incurred by KMOD, in addition to the actual loss of business income sustained during a period of restoration, that KMOD would not have otherwise incurred if there had been no direct physical loss of the property.

7.      The same coverage also provided additional "Civil Authority" coverage, under which Defendants promised to pay for loss of business income KMOD sustained and necessary "Extra Expense" KMOD incurred that was caused by actions of civil authorities "that prohibit[] access to the described premises."

8.      Because it purchased these additional coverages, KMOD reasonably expected that its claims for loss of business income and extra expenses arising from the inability to physically use its insured premises would be paid under this coverage unless specifically and unambiguously excluded.

9.      KMOD complied with its obligations under the Policy by timely paying all premiums required.

10.     Effective March 16, 2020, pursuant to an Executive Order of the Governor of North Carolina, KMOD was forced to close its gyms.[2]

11.     As a result of the Orders of the various civil authorities, KMOD suffered, and/or continues to suffer, significant and injurious business interruption losses and expenses directly related to the physical inability to use the premises covered by its Policy.

12.     KMOD reported notice of its losses to Defendants on March 17, 2020.

13.     In response, on March 24, 2020, Defendants reneged on their promises and wrongfully failed to fulfill their contractual obligation to provide coverage for, and pay, KMOD's business income losses and extra expense losses resulting from the suspension of their operations, including suspensions resulting from the actions of civil authorities. Defendants' actions in improperly denying KMOD's claims were in blatant disregard for KMOD's contractual rights and resulted in a material breach of Defendants' duties and obligations owed under the Policy, causing serious financial damages to KMOD.

14.     Indeed, on information and belief, there are hundreds, if not thousands, of gyms and other health clubs insured by Defendants and their affiliates, which have the same or similar policies issued by Defendants providing the same or similar business income, extra expense coverage and extended business income coverage. KMOD believes, and therefore alleges, that Defendants have also wrongfully, capriciously and arbitrarily denied coverage and payments to these other small businesses.

---

[2] *See* March 16, 2020 Executive Order, attached as Exhibit B.

## THE PARTIES

15.    KMOD is a North Carolina corporation with a principal place of business of 145 Tuskarora Point LN, Mooresville, NC 28117.

16.    The Hanover American Insurance Company is a Massachusetts corporation, with a principal place of business at 440 Lincoln Street, Worcester, Massachusetts 01653. The Hanover American Insurance Company is the issuer of the Policy and is authorized to write, sell, and issue insurance policies providing property and business interruption coverage. At all material times hereto, The Hanover American Insurance Company conducted and transacted business through the selling and issuing of insurance policies, including but not limited to selling and issuing commercial property coverage to KMOD and all other Class Members as defined infra.

17.    The Hanover Insurance Group, Inc. is a Massachusetts corporation, with a principal place of business at 440 Lincoln Street, Worcester, Massachusetts 01653. The Hanover Insurance Group, Inc. is authorized to write, sell, and issue insurance policies providing property and business income coverage through its subsidiaries like Defendant, The Hanover American Insurance Company, in the state of North Carolina.

18.    At all material times hereto, Defendants conducted and transacted business through the selling and issuing of insurance policies, including but not limited to selling and issuing commercial property coverage to KMOD and all other Class Members as defined below.

19.    In doing the acts alleged herein, Defendant The Hanover American Insurance Company was acting in the course and scope of such agency, representation,

joint venture, conspiracy, consultancy, predecessor agreement, successor agreement, service and employment, with knowledge, acquiescence, and ratification of its principal The Hanover Insurance Group, Inc.

20.     At all times alleged herein, Defendants shall include any and all named or unnamed parent companies, parent corporations, subsidiaries, affiliates, divisions, franchises, partners, joint venturers, and any organizational units of any kind, their predecessors, successors, successors in interest, assignees, and their officers, directors, employees, agents, representatives and any and all other persons acting on their behalf.

## JURISDICTION AND VENUE

21.     This Court has subject matter jurisdiction over the claims asserted in this action under 28 U.S.C. § 1332 because there is complete diversity between Defendants and at least one member of each class; there are more than one hundred members of each class; and the amount in controversy exceeds $5,000,000 exclusive of interest and costs. This Court also has subject matter jurisdiction under 28 U.S.C. §§ 2201 and 2202, and is authorized to grant declaratory relief under these statutes.

22.     Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(2) because the Defendants reside in this district, a substantial part of the events giving rise to Plaintiff's claims occurred here, Defendants transact a substantial amount of business in this District, Defendants otherwise have sufficient contacts with this District to justify being fairly brought into this District.

23.     This Court has personal jurisdiction over the Defendants because they are incorporated or reside in Massachusetts.

## FACTUAL BACKGROUND

*The Policies*

24.     KMOD's Policy has an effective period of July 1, 2019 to July 1, 2020, and

insures business operations at the properties located at 20601 Torrence Chapel Road,

Cornelius, North Carolina 28031, and 631 Brawley School Road, Suite 401, Mooresville

North Carolina 28117.

25.     The Policy is an all risk policy, meaning that all risks are covered unless

specifically excluded or limited by the policies. All risk coverage is defined by

limitations and exclusions in the Policy.

26.     The Policy contains a Building and Personal Property Coverage Form (CP

00 10 10 12), which states:

> We will pay for direct physical loss of or damage to Covered Property at
> the premises described in the Declarations caused by or resulting from any
> Covered Cause of Loss.

27.     Covered Causes of Loss for the coverages at issue here are described in

the policy as "direct physical loss unless the loss is excluded or limited in this policy."

28.     The policy also contains the "Silver Property Broadening Endorsement"

Form (411-0792), which modifies the Building and Personal Property Coverage Forms

and Causes of Loss-Special Forms to include Additional Coverages for Business Income

and Extra Expense.

29.     Under these coverages, Defendants are obligated to indemnify KMOD

whenever it sustains a loss or damage caused by or resulting from a Covered Cause of

Loss, "for the actual loss of Business Income you sustain due to the necessary

6

"suspension" of your "operations" during the "period of restoration."

30.    The suspension of operations must be caused by direct physical loss of or damage to property at premises which are described in the Declarations and for which a Business Income Limit of Insurance is shown in the Declarations. The loss or damage must be caused by or result from a Covered Cause of Loss. These requirements are met here. Under this coverage Defendants specifically promised KMOD:

> We will pay for the actual loss of Business Income you sustain due to the necessary "suspension" of your "operations" during the "period of restoration". The "suspension" must be caused by direct physical loss of or damage to property at premises which are described in the Declarations. The loss or damage must be caused by or result from a Covered Cause of Loss…

31.    The phrases "damage," "direct physical loss" and "damage to property" are not defined by the policy. However, suspension is defined as "a. The slowdown or cessation of your business activities; or; b. That a part or all of the described premises is rendered untenantable, if coverage for Business Income … applies."

32.    The Policy also provides additional Extended Business Income coverage, which covers an extended time period after operations are resumed but before they are back to normal, as follows:

> Extended Business Income

> If the necessary "suspension" of your "operations" produces a Business Income loss payable under this policy, we will pay for the actual loss of Business Income you incur during the period that:

>> (a)    Begins on the date property (except "finished stock") is actually repaired, rebuilt or replaced and "operations" are resumed; and

>> (b)    Ends on the earlier of:

(i)   The date you could restore your "operations", with reasonable speed, to the level which would generate the business income amount that would have existed if no direct physical loss or damage had occurred; or

(ii)   60 consecutive days after the date determined in (1)(a) above.

However, Extended Business Income does not apply to loss of Business Income incurred as a result of unfavorable business conditions caused by the impact of the Covered Cause of Loss in the area where the described premises are located. Loss of Business Income must be caused by direct physical loss or damage at the described premises caused by or resulting from any Covered Cause of Loss.

33.     In addition to promising to pay for loss of Business Income, under the Policy, Defendants also promised to pay for certain necessary "Extra Expense." Extra Expense means expenses the policyholder incurs to, for example, minimize or offset the suspension of business operations.

34.     Finally, the Policy also provides additional "Civil Authority" coverage under which Defendants will pay for loss of business income sustained when an action by a civil authority prohibits access to the business:

(a)   Civil Authority

We will pay for the actual loss of Business Income you sustain and necessary Extra Expense caused by action of civil authority that prohibits access to the described premises due to direct physical loss of or damage to property, other than at the described premises, caused by or resulting from any Covered Cause of Loss.

The coverage for Business Income will begin 72 hours after the time of that action and will apply for a period of up to three consecutive weeks after coverage begins.

35.     The Business Income and Extra Expense coverage, as well as the Extended Business Income coverages, are separate, independent and not mutually exclusive of coverage for Civil Authority; thus, KMOD could theoretically recover under any one of these coverages or all of these coverages at the same time.

36.     The Policies not contain any exclusions or limitations that would allow Defendants to deny coverage for the Plaintiff's business income losses and expenses.

*History of COVID-19*

37.     On December 31, 2019, the World Health Organization reported people in China were becoming sick due to a mysterious form of pneumonia.

38.     On January 11, 2020, China reported its first death from the mysterious form of pneumonia.

39.     On January 21, 2020, the first confirmed case of the mysterious form of pneumonia was reported in the United States.

40.     On January 30, 2020, for only the sixth time in its history, the World Health Organization (WHO), declared the outbreak of the mysterious form of pneumonia a Public Health Emergency of International Concern.

41.     On February 11, 2020, the WHO announced COVID-19, also known as coronavirus disease, as the name for the new mysterious form of pneumonia.

42.     On February 29, 2020, the first death caused by COVID-19 was reported in the United States.

43.     On March 13, 2020, President Trump declared the outbreak of COVID-19 to be a national emergency.

44.     As of March 17, 2020, COVID-19 was reported to be present in every state in the United States.

45.     As of March 26, 2020, the United States had more confirmed cases of COVID-19 than any other country in the world.

*Actions of Civil Authorities in North Carolina*

46.     On March 10, 2020, Governor Roy Cooper issued an order for "adequate protection of lives and property of North Carolinians" recognizing that the spread of COVID-19 constitutes an emergency that affects the public health of the people of North Carolina[3] and to declare a state of emergency in North Carolina stating, among other things, that the pandemic could be mitigated by the "cleaning and disinfecting" of property.

47.     On March 23, 2020, the Governor issued an Emergency Order prohibiting the physical operation of gyms operating in North Carolina.[4]

48.     On March 27, 2020, the Governor issued an Emergency Stay At Home Order closing all non-essential business, including gyms, indefinitely.

49.     On September 4, 2020, Governor Roy Cooper ordered that playgrounds, museums and gyms were allowed to open at only 30% capacity.

50.     The actions of the State of North Carolina forced KMOD to cease, suspend, limit or otherwise lose the physical use of the insured premises to conduct business operations.

---

[3] *See* Exhibit C.
[4] *See* Exhibit D.

*Impact of COVID-19 in North Carolina*

51.    North Carolina's April 2020 unemployment rate was 12.2 percent, compared with 4.3 percent in March and 3.5 percent in February. By comparison, at the height of the Great Recession, North Carolina's unemployment rate was 10.9 percent.

52.     Over 635,000 North Carolinians have filed Unemployment Insurance claims since March 15, 2020 when government shutdown orders prevented the physical use of businesses premises, thereby causing major job losses in North Carolina.

53.    As of the filing of this complaint, 13 percent of the people working before the COVID-19 recession have submitted unemployment insurance claims, the fastest mass loss of jobs in North Carolina history.

*KMOD's Covered Losses*

54.    Based on the state orders described above, KMOD was prevented from physically using its insured premises to conduct business as of March 16, 2020.

55.    Indeed, even after KMOD was permitted to partially resume physical use of its insured premises under the state orders described above, it continued to suffer losses and incur extra operating expenses.

56.    KMOD has suffered a suspension of normal business operations and a cessation of all operations on their premises, sustained losses of business income, and incurred extra expenses.

57.    These losses and expenses have continued through the date of filing of this action.

58.    These losses and expenses are not excluded from coverage under the

Policy, and because the Policy is an all-risk policy, and KMOD has complied with its contractual obligations, KMOD is entitled to payment for these losses and expenses.

59.     While KMOD's policy contains the "Exclusion of Loss Due to Virus or Bacteria" Endorsement (CP 01 40 07 06), the exclusion does not apply because, among other things, KMOD's losses were not caused by a "virus, bacterium or other microorganism that induces or is capable of inducing physical distress, illness or disease." Rather, the factual and efficient proximate cause of KMOD's losses were precautionary measures taken by the State of North Carolina to prevent the spread of COVID-19 in the future, not actual contamination of the insured premises with any "virus, bacterium or other microorganism …"

60.     KMOD has suffered a suspension and/or cessation of all normal business operations given the response to the global pandemic associated with the spread of COVID-19, including the actions of civil authority described herein.

61.     Contrary to the plain language of the Policy, and to Defendants' corresponding promises and contractual obligations, Defendants have refused to pay for KMOD's losses and expenses under the terms of the Policy.[5]

## CLASS ACTION ALLEGATIONS

62.     The class claims all derive directly from a single course of conduct by Defendants and their systematic, uniform, capricious and arbitrary refusal to pay insureds for covered losses resulting from the actions taken by civil authorities to

---

[5] *See* Exhibit E.

suspend business operations.

63.    KMOD brings this action pursuant to Rules 23(a), 23(b)(1), 23(b)(2), and/or 23(b)(3), as well as 23(c)(4), of the Federal Rules of Civil Procedure, individually and on behalf of all others similarly situated. This action satisfies the numerosity, commonality, typicality, adequacy, predominance, and superiority requirements of those provisions.

64.    KMOD seeks to represent three nationwide classes as the Court may deem appropriate defined as:

a)    All gyms, health clubs and fitness centers that purchased Business Income and Extra Expense coverage under a policy of insurance issued by the Defendants covering any part of the period from March 1, 2020 through the present, that suffered a suspension of business operations due to government prohibitions on the physical use of their insured premises, that provided Defendants or their agents notice of a suspension of business operations due to government prohibitions on the physical use of their insured premises and for which the Defendants have failed to fully indemnify such losses ("the Business Income Coverage Class").

b)    All gyms, health clubs and fitness centers that purchased Extended Business Income coverage under a policy of insurance issued by the Defendants covering the period of March 2020 through the present, that provided Defendants or their agents notice of such extra

expenses, and for which Defendants have failed to fully indemnify such losses ("the Extra Expense Coverage Class").

c) All gyms, health clubs and fitness centers that purchased Civil Authority coverage under a policy of insurance issued by the Defendants covering the period of March 2020 through the present, that provided Defendants or their agents notice of such losses, and for which Defendants have failed to fully indemnify such losses ("the Civil Authority Coverage Class").

65. Plaintiff also seeks to represent a Massachusetts subclass, defined as: All businesses in Massachusetts that purchased Business Income and Extra Expense, Extra Expense, and/or Civil Authority coverage under a property insurance policy issued by Defendants, covering the period of March 2020 through the present, that suffered an actual loss of Business Income and/or Extra Expense due to a suspension of business operations, that provided Defendants or their agents notice of such losses, and for which Defendants have failed to fully indemnify such losses ("the Massachusetts Subclass").

66. Excluded from each defined proposed Classes are Defendants and any of their members, affiliates, parents, subsidiaries, officers, directors, employees, successors, or assigns; governmental entities; Class Counsel and their employees; and the judicial officers and Court staff assigned to this case and their immediate family members.

67.     KMOD reserves the right to modify, expand, or amend the definitions of the proposed Classes, as appropriate, during the course of this litigation.

68.     This action has been brought and may properly be maintained on behalf of each Class proposed herein under the criteria of Rule 23 of the Federal Rules of Civil Procedure.

*Numerosity and Ascertainability*

69.     This action satisfies the requirements of Fed. R. Civ. P. 23(a)(1). The members of each proposed Class are so numerous that individual joinder of all Class members is impracticable. There are, at a minimum, hundreds, if not thousands, of members of each proposed Class, and these individuals and entities are spread out across the Commonwealth and the United States.

70.     The identity of Class members is ascertainable, as the names and addresses of all Class members can be identified in Defendants' or their agents' books and records. Class members may be notified of the pendency of this action by recognized, Court-approved notice dissemination methods, which may include U.S. mail, electronic mail, internet postings, and/or published notice.

*Predominance of Common Issues*

71.     This action satisfies the requirements of Fed. R. Civ. P. 23(a)(2) and 23(b)(3) because this action involves common questions of law and fact that predominate over any questions affecting only individual Class members. Defendants issued the same or substantially similar all-risk policies using the same or similar coverage forms to all the members of each proposed Class in exchange for payment of

premiums by the Class members. The questions of law and fact affecting all Class members include, without limitation, the following:

a)   Whether KMOD and the Class members suffered a covered cause of loss under the policies issued to members of the Class;

b)   Whether Defendants wrongfully, capriciously and arbitrarily denied all claims based on the facts set forth herein;

c)   Whether Defendants' Business Income coverage applies based on the facts set forth herein;

d)   Whether Defendants' Civil Authority coverage applies to a loss of Business Income based on the facts set forth herein;

e)   Whether Defendants' Extra Expense coverage applies to efforts to avoid or minimize a loss caused by the suspension of business based on the facts set forth herein;

f)   Whether Defendants have breached their contracts of insurance through a uniform and blanket denial of all claims for business losses based on the facts set forth herein;

g)   Whether the Defendants acted in bad faith, breached their contract and breached the duty of good faith and fair dealing through a uniform and blanket denial of all claims for business losses based on the facts set forth herein; and

h)   Whether KMOD and the Class members suffered damages as a result of Defendants' actions; and

i)     Whether KMOD and the Class members are entitled to an award of

reasonable attorneys' fees, interest, and costs.

*Typicality*

72.     This action satisfies the requirements of Fed. R. Civ. P. 23(a)(3) because

KMOD's claims are typical of the claims of the Class members and arise from the same

course of conduct by Defendants. KMOD and the other Class members are all similarly

affected by Defendants' refusal to pay under their Policies, which are representative of

the same or similar all-risk policies issued by the Defendants. KMOD's claims are based

upon the same legal theories as those of the other Class members. KMOD and the other

Class members sustained damages as a direct and proximate result of the same

wrongful practices in which Defendants engaged. The relief KMOD seeks is typical of

the relief sought for the absent Class members.

*Adequacy of Representation*

73.     This action satisfies the requirements of Fed. R. Civ. P. 23(a)(4) because

KMOD will fairly and adequately represent and protect the interests of Class members.

KMOD has retained counsel with substantial experience in prosecuting complex class

action and insurance coverage litigation.

74.     KMOD and its counsel are committed to vigorously prosecuting this

action on behalf of the Class members and have the financial resources to do so. Neither

KMOD nor its counsel has interests adverse to those of the Class members.

*Inconsistent or Varying Adjudications and the Risk of Impediments*
*to Other Class Members' Interests*

75.     This action satisfies the requirements of Fed. R. Civ. P. 23(b)(1). KMOD

seeks class-wide adjudication as to the interpretation and scope of Defendants'

insurance policies. Upon information and belief, all insurance policies issued by the

Defendants to the classes insure the same categories of losses, and use the same

language and forms with regard to the threshold issues of coverage presented by this

complaint. The prosecution of separate actions by individual members of the proposed

Classes would create an imminent risk of inconsistent or varying adjudications that

would establish incompatible standards of conduct for Defendants, despite the use of

identical policy language to define their obligations.

*Final Injunctive and/or Corresponding Declaratory Relief with respect*
*to the Class is Appropriate*

76.     This action satisfies the requirements of Fed. R. Civ. P. 23(b)(2) because

Defendants acted or refused to act on grounds generally applicable to KMOD and the

members of the Classes, thereby making appropriate final injunctive and/or

corresponding declaratory relief with respect to the Class members. The Class' claims

all derive directly from Defendants' systematic, uniform, capricious and arbitrary

refusal to pay insureds for losses suffered due to government prohibitions on the use of

insured premises in response to the pandemic associated with the spread of COVID-19.

Defendants' actions or refusal to act are grounded upon the same generally applicable

legal theories.

*Superiority*

77.     This action satisfies the requirements of Fed. R. Civ. P. 23(b)(3) because a

class action is superior to other available methods for the fair and efficient group-wide adjudication of this controversy. The common questions of law and of fact regarding Defendants' conduct and the interpretation of the common language in their insurance policies predominate over any questions affecting only individual Class members.

78.     Because the damages suffered by certain individual Class members may be relatively small, the expense and burden of individual litigation would make it very difficult for all individual Class members to redress the wrongs done to each of them individually, such that many Class members would have no rational economic interest in individually controlling the prosecution of specific actions, and the burden imposed on the judicial system by individual litigation by even a small fraction of the Class would be enormous, making class adjudication the superior alternative under Fed. R. Civ. P. 23(b)(3)(A).

79.     The conduct of this action as a class action presents far fewer management difficulties, far better conserves judicial resources and the parties' resources, and far more effectively protects the rights of each Class member than would piecemeal litigation. Compared to the expense, burdens, inconsistencies, economic infeasibility, and inefficiencies of individualized litigation, the challenges of managing this action as a class action are substantially outweighed by the benefits to the legitimate interests of the parties, the Court, and the public of class treatment in this Court, making class adjudication superior to other alternatives, under Fed. R. Civ. P. 23(b)(3)(D).

80.     KMOD is not aware of any obstacles likely to be encountered in the management of this action that would preclude its maintenance as a class action. Rule

23 provides the Court with authority and flexibility to maximize the efficiencies and benefits of the class mechanism and reduce management challenges. The Court may, on motion of KMOD or on its own determination, certify nationwide, statewide and/or multistate classes for claims sharing common legal questions; utilize the provisions of Rule 23(c)(4) to certify any particular claims, issues, or common questions of fact or law for class-wide adjudication; certify and adjudicate bellwether class claims; and utilize Rule 23(c)(5) to divide any Class into subclasses.

## CAUSES OF ACTION
### COUNT I: DECLARATORY JUDGMENT
**(On behalf of the Business Income Coverage Class)**

81.     KMOD brings this Count both individually and on behalf of the other members of the Business Income Coverage Class.

82.     Under 28 U.S.C. §§ 2201 and 2202, this Court has jurisdiction to declare the rights and other legal relations of the parties in dispute.

83.     KMOD's Policy, as well as the policies of other Business Income Coverage Class members, are insurance contracts under which Defendants were paid premiums in exchange for promises to pay Class members' losses for claims covered by the policies.

84.     In the policies, Defendants promised to pay for losses of business income and extra expense sustained as a result of perils not excluded under the policies. Specifically, Defendants promised to pay for losses of business income and extra expense sustained as a result of a suspension of business operations during the period of restoration.

85.     KMOD and Class members suffered direct physical loss of or damage to KMOD's insured premises and other Class members' insured premises, resulting in interruptions or suspensions of business operations at the locations. These suspensions and interruptions have caused KMOD and Class members to suffer losses of business income and extra expense.

86.     These suspensions and interruptions, and the resulting losses, triggered business income and extra expense coverage under the Policy and other Class members' policies.

87.     KMOD and the other Class members have complied with all applicable provisions of their Policy, including payment of premiums.

88.     Defendants, without justification, denied that the Policy and other Class members' policies provide coverage for these losses.

89.     KMOD seeks a Declaratory Judgment that their Policies and other Class members' policies provide coverage for the losses of business income and extra expense attributable to the facts set forth above.

90.     An actual case or controversy exists regarding KMOD and other Class members' rights and Defendants' obligations to reimburse KMOD and other Class members for the full amount of these losses. Accordingly, the Declaratory Judgment sought is justiciable.

**WHEREFORE**, KMOD requests that this Court enter a Declaratory Judgment declaring that the Policies and other Class members' policies provide coverage for Class members' losses of business income.

## COUNT II: BREACH OF CONTRACT
### (On behalf of the Business Income Coverage Class)

91.     KMOD brings this Count both individually and on behalf of the other

members of the Business Income Coverage Class.

92.     KMOD's policy, as well as the policies of other Business Income Coverage

Class members, are insurance contracts under which Defendants were paid premiums

in exchange for promises to pay Class members' losses for claims covered by the Policy.

93.     In the policies, Defendants promised to pay for losses of business income

and extra expense incurred as a result of perils not excluded under the policies.

Specifically, Defendants promised to pay for losses of business income and extra

expense sustained as a result of a suspension of business operations during the period

of restoration.

94.     KMOD and Class members have suffered a direct physical loss of or

damage to KMOD's insured premises and other Class members' insured premises as a

result of interruptions or suspensions of business operations at these premises. These

interruptions and suspensions have caused Class members to suffer losses of business

income and extra expense.

95.     These losses triggered business income and extra expense coverage under

both the Policy and other Class members' policies.

96.     KMOD and the other Class members have complied with all applicable

provisions of their Policy, including payment of premiums.

97.     Defendants have denied coverage and refused performance under the

Policy and other Class members' policies by denying coverage for these losses and expenses. Accordingly, Defendants are in breach of the Policy and other Class members' policies.

98.     As a result of Defendants' breaches of the Policy and other Class members' policies, KMOD and other Class members have suffered actual and substantial damages for which Defendants are liable.

**WHEREFORE**, KMOD, both individually and on behalf of other Class members, seeks compensatory damages resulting from Defendants' breaches of their Policy and other Class Members' policies and seeks all other relief deemed appropriate by this Court.

### COUNT III: BAD FAITH BREACH OF CONTRACT AND THE DUTY OF GOOD FAITH AND FAIR DEALING (On behalf of the Business Income Coverage Class)

99.     KMOD brings this Count both individually and on behalf of the other members of the Business Income Coverage Class.

100.     KMOD's policy, as well as the policies of other Business Income Coverage Class members, are insurance contracts under which Defendants were paid premiums in exchange for promises to pay Class members' losses for claims covered by the policies.

101.     In the Policy, Defendants promised to pay for losses of business income and extra expense incurred as a result of perils not excluded under the policies. Specifically, Defendants promised to pay for losses of business income and extra expense sustained as a result of a suspension of business operations during the period of restoration.

102.    KMOD and Class members suffered an actual loss of business income and extra expense to the necessary suspension of KMOD's gyms and other Class members' business operations at insured premises and said suspension(s) were caused by direct physical loss of and damage to KMOD's gyms and other Class members' insured premises caused by or resulting from Covered Causes of Loss under the policy and other Class members' policies. These actual losses, therefore, triggered Business Income and Extra Expense coverage under both the policy and other Class members' policies.

103.    These Covered Causes of Loss were direct, physical and foreseeable causes of loss under the policy and other Class members' policies and they each caused, and/or resulted in, dangerous physical conditions at, and physical injuries to, KMOD's gyms, other Class members' insured premises and property immediately adjacent to each. The subject Covered Causes of Loss pose a serious risk to and endanger(ed) the public's health, safety and property and rendered KMOD's gyms and other Class members' insured premises unusable and/or uninhabitable; thus, mandating a suspension of business operations.

104.    These losses and expenses are not excluded from coverage under the policy. The policy is an all-risk policy meaning Covered Causes of Loss are determined by exclusions and the subject Covered Causes of Loss were not excluded under the policy.

105.    Furthermore, these Covered Causes of Loss caused direct physical loss and damage to KMOD's various business premises and the other Class Members' insured premises resulting in dangerous physical conditions, the nature of such loss

and damage to property having been recognized by civil authorities in Orders addressing COVID-19.

106.    KMOD and the other Class members have complied with all applicable provisions of their Policy, including payment of premiums.

107.    The actions of the Defendants give rise to a cause of action for bad faith breach of contract and the duty of good faith and fair dealing as KMOD and other Class members were covered under KMOD's policy, as well as the policies of other Business Income Coverage Class members, and the Defendants have breached the terms of said policies by denying business income and extra expense coverage to KMOD and other Class members. Defendants' actions in breaching the terms of KMOD's policy and the other Class Members' policies, in bad faith, have proximately caused damages to KMOD and other Class members and the damages were reasonably foreseeable to the Defendants.

108.    It appears that the Defendants' conduct was performed because it placed its own financial interests before KMOD's and other Class Members' financial interests.

109.    Further, the actions of the Defendants in denying business income and extra expense coverage to KMOD and other Class Members was done without any legitimate basis or arguable reason and constitute intentional and/or malicious conduct or gross negligence and reckless disregard.

110.    Implied in KMOD's policy and the other Class Members' policies is a duty of good faith and fair dealing with respect to conduct encompassed by contractual relations. Defendants conduct as aforesaid breached the duty of good faith and fair

dealing which further gives rise to the tort of bad faith for the breach of contract.

111.    Defendants, at all times relevant hereto, owed KMOD and other Class Members a duty to exercise good faith and an obligation to deal fairly with them; however, the denial of business income and extra expense coverage by Defendants constituted a bad faith breach of contract and was totally made with only the Defendants' best interests in mind and in total disregard of the contractual rights of KMOD and other Class Members.

112.    Defendants' bad faith material breach(es) of KMOD's Policy, as well as other Class members' policies, has resulted in actual and substantial damages to KMOD and Business Income Coverage Class members, depriving all of the benefit of their bargain, and represents, in addition to warranting contractual damages, incidental damages and consequential damages, an independent tort entitling KMOD and other Class Members to punitive damages in an amount which will punish the Defendants for their intentional, grossly negligent, and/or reckless conduct as well as to deter Defendants and others from similar misconduct in the future.

**WHEREFORE**, KMOD, both individually and on behalf of other Class members, seeks compensatory damages, contractual damages, incidental damages, consequential damages, and punitive damages, resulting from Defendants' bad faith breach(es) of the Policies and other Class Members' policies and seeks all other relief deemed appropriate by this Court.

**COUNT IV: DECLARATORY JUDGMENT**
**(On behalf of the Extended Business Income Coverage Class)**

26

113.    KMOD bring this Count both individually and on behalf of the other members of the Extra Expense Coverage Class.

114.    Under 28 U.S.C. §§ 2201 and 2202, this Court has jurisdiction to declare the rights and other legal relations of the parties in dispute.

115.    KMOD's Policy, as well as the policies of other Extended Business Income Coverage Class members, are insurance contracts under which Defendants were paid premiums in exchange for promises to pay Class members' losses for claims covered by the policies.

116.    Specifically, Defendants promised to pay for extended business income for losses incurred by KMOD and other Class members during the period of restoration that the insureds would not have incurred if there had been no loss or damage to the insured premises. Extended business income included income to avoid or minimize the suspension of business, continue operations, and to repair or replace property.

117.    KMOD and Class members suffered direct physical loss of or damage to their locations and other Class members' insured premises, resulting in suspensions or interruptions of business operations at these premises. As a result, KMOD and other Class members have incurred losses, as defined in the Policy and other Class members' policies.

118.    These losses triggered Extended Business Income coverage under the policies and other Class members' policies.

119.    KMOD and the other Class members have complied with all applicable provisions of their Policy, including payment of premiums.

27

120.    Defendants, without justification, denied that the Policies and other Class members' policies provide coverage for these Extended Business Income.

121.    KMOD, both individually and on behalf of the other members of the Extended Business Income Coverage Class, seeks a Declaratory Judgment that their Policies, and those of other members of the Extended Business Income Coverage Class, provides coverage for these extended business income losses.

122.    An actual case or controversy exists regarding Class members' rights and Defendants' obligations under Class members' policies to reimburse Class members for extended business income. Accordingly, the Declaratory Judgment sought is justiciable.

**WHEREFORE**, KMOD requests that this Court enter a Declaratory Judgment declaring that the Policy and other Class members' policies provide coverage for Class members' extended business income.

## COUNT V: BREACH OF CONTRACT
### (On behalf of the Extended Business Income Coverage Class)

123.    KMOD brings this Count individually and on behalf of the other members of the Extended Business Income Coverage Class.

124.    KMOD's Policy, as well as the policies of other Extended Business Income Coverage Class members, are insurance contracts under which Defendants were paid premiums in exchange for promises to pay Class members' losses for claims covered by their policies.

125.    Specifically, Defendants promised to pay for extended business income for losses incurred by KMOD and other Class members during the period of restoration

that the insureds would not have incurred if there had been no loss or damage to the insured premises. Extended business income losses included income to avoid or minimize the suspension of business, continue operations, and to repair or replace property.

126.    KMOD and Class members suffered direct physical loss of or damage to their locations and other Class members' insured premises, resulting in suspensions and interruptions of business operations at these premises. These suspensions and interruptions have caused Class members to incur Extra Expenses.

127.    These expenses triggered extended business income coverage under the policies and other Class members' policies.

128.    KMOD and the other Class members have complied with all applicable provisions of their policies, including payment of premiums.

129.    Defendants has denied coverage and refused performance extended business income. Accordingly, Defendants are in breach of the Policies and other Class members' policies.

130.    As a result of Defendants' breaches of the Policy and other Class members' policies, KMOD and other Class members have suffered actual and substantial damages for which Defendants are liable.

**WHEREFORE**, KMOD, individually and on behalf of other Class members, seeks compensatory damages resulting from Defendants' breaches of the Policies and other Class Members' policies and seeks all other relief deemed appropriate by this Court.

**COUNT VI: BAD FAITH BREACH OF CONTRACT AND**

## THE DUTY OF GOOD FAITH AND FAIR DEALING
### (On behalf of the Extended Business Income Coverage Class)

131.    KMOD brings this Count both individually and on behalf of the other

members of the Extra Expense Coverage Class.

132.    KMOD's Policy, as well as the policies of other Extended Business Income

Coverage Class members, are insurance contracts under which Defendants were paid

premiums in exchange for promises to pay Class members' losses for claims covered by

the policies.

133.    In the policies, Defendants promised to pay extended business income for

losses incurred as a result of perils not excluded under the policies. Specifically,

Defendants promised to pay for losses of Extended Business Income sustained as a

result of a suspension of business operations during the period of restoration.

134.    KMOD and Class members suffered an actual loss of business income due

to the necessary Suspension of KMOD's gyms and other Class members' business

operations at insured premises and said suspension(s) were caused by direct physical

loss of and damage to their gyms and other Class members' insured premises caused by

or resulting from Covered Causes of Loss under the Policies and other Class members'

policies. These actual losses, therefore, triggered Extended Business Income coverage

under KMOD's Policy and other Class members' policies.

135.    These Covered Causes of Loss were direct, physical and foreseeable

causes of loss under the Policies and other Class members' policies and they each

caused, and/or resulted in, dangerous physical conditions at, and physical injuries to,

their gyms, other Class members' insured premises and property immediately adjacent

to each. The subject Covered Causes of Loss pose a serious risk to and endanger(ed) the

public's health, safety and property and rendered KMOD's gyms and other Class

members' insured premises unusable and/or uninhabitable; thus, mandating a

suspension of business operations.

136.    These losses and expenses are not excluded from coverage under the

policies. The policies are all-risk policies meaning Covered Causes of Loss are

determined by exclusions and the subject Covered Causes of Loss were not excluded

under the policies.

137.    Furthermore, these Covered Causes of Loss caused direct physical loss

and damage to KMOD's various business premises and the other Class Members'

insured premises resulting in dangerous physical conditions, the nature of such loss

and damage to property having been recognized by civil authorities in Orders

addressing COVID-19.

138.    KMOD and the other Class members have complied with all applicable

provisions of their Policy, including payment of premiums.

139.    The actions of the Defendants give rise to a cause of action for bad faith

breach of contract and the duty of good faith and fair dealing as KMOD and other Class

members were covered under their Policy, as well as the policies of other Class

members, and the Defendants have breached the terms of said policies by denying

extended business income coverage to KMOD and other Class members. Defendants'

actions in breaching the terms of KMOD's policy and the other Class Members' policies,

in bad faith, have proximately caused damages to KMOD and other Class members and the damages were reasonably foreseeable to the Defendants.

140.   It appears that the Defendants' conduct was performed because it placed its own financial interests before KMOD's and other Class Members' financial interests.

141.   Further, the actions of the Defendants in denying extended business income coverage to KMOD and other Class Members was done so without any legitimate basis or arguable reason and constitute intentional and/or malicious conduct or gross negligence and reckless disregard.

142.   Implied in KMOD's Policy and the other Class Members' policies is a duty of good faith and fair dealing with respect to conduct encompassed by contractual relations. Defendants' conduct as aforesaid breached the duty of good faith and fair dealing which further gives rise to the tort of bad faith for the breach of contract.

143.   Defendants, at all times relevant hereto, owed KMOD and other Class Members a duty to exercise good faith and an obligation to deal fairly with them; however, the denial of extended business income coverage by Defendants constituted a bad faith breach of contract and was totally made with only the Defendants' best interests in mind and in total disregard of the contractual rights of KMOD and other Class Members.

144.   Defendants' bad faith material breach(es) of KMOD's Policy, as well as other Class members' policies, has resulted in actual and substantial damages to KMOD and Extended Business Income Coverage Class members, depriving all of the benefit of their bargain, and represents, in addition to warranting contractual damages, incidental

damages, and consequential damages, an independent tort entitling KMOD and other

Class Members to punitive damages in an amount which will punish the Defendants for

their intentional, grossly negligent, and/or reckless conduct as well as to deter

Defendants and others from similar misconduct in the future.

     **WHEREFORE**, KMOD, both individually and on behalf of other Class members,

seeks compensatory damages, contractual damages, incidental damages, consequential

damages, and punitive damages, resulting from Defendants' bad faith breach(es) of the

Policy and other Class Members' policies, and seeks all other relief deemed appropriate

by this Court.

### COUNT VII: DECLARATORY JUDGMENT
### (On behalf of the Civil Authority Coverage Class)

     145.    KMOD brings this Count both individually and on behalf of the other

members of the Civil Authority Coverage Class. Under 28 U.S.C. §§ 2201 and 2202, this

Court has jurisdiction to declare the rights and other legal relations of the parties in

dispute.

     146.    KMOD's Policy, as well as the policies of other Civil Authority Coverage

Class members, are insurance contracts under which Defendants were paid premiums

in exchange for promises to pay Class members' losses for claims covered by the

policies.

     147.    In KMOD's Policy and other Class members' policies, Defendants

promised to pay for losses of business income sustained and extra expenses incurred

when, among other things, a covered cause of loss causes damage to property other

than KMOD's properties prohibits access to KMOD's properties.

148.    KMOD and other Class members have suffered losses and incurred

expenses as a result of actions of civil authorities that prohibited access to insured

premises under the Policy and Class members' policies.

149.    These losses satisfied all requirements to trigger Civil Authority coverage

under the Policy and other Class members' policies.

150.    KMOD and the other Class members have complied with all applicable

provisions of the policies, including payment of premiums.

151.    Defendants, without justification, deny that the policies provide coverage

for these losses.

152.    KMOD seeks a Declaratory Judgment that its Policy and other Class

members' policies provide coverage for the losses that Class members have sustained

and extra expenses they have incurred caused by actions of civil authorities.

153.    An actual case or controversy exists regarding Class members' rights and

Defendant's obligations under Class members' policies to reimburse Class members for

these losses and extra expenses. Accordingly, the Declaratory Judgment sought is

justiciable.

**WHEREFORE**, KMOD, both individually and on behalf of other Class members,

requests that this Court enter a Declaratory Judgment declaring that their policies

provides Civil Authority coverage for the losses and extra expenses incurred by KMOD

and the other Class members.

## COUNT VIII: BREACH OF CONTRACT

**(On behalf of the Civil Authority Coverage Class)**

154.    KMOD brings this Count individually and on behalf of the other members of the Civil Authority Coverage Class.

155.    KMOD's Policy, as well as the policies of other Civil Authority Coverage Class members, are insurance contracts under which Defendants were paid premiums in exchange for promises to pay Class members' losses and expenses covered by the policies.

156.    In the Policy and other Class members' policies, Defendants promised to pay for losses of business income sustained and extra expenses incurred when a covered cause of loss causes damage to property near the insured premises, the civil authority prohibits access to property near the insured premises, and the civil authority action is taken in response to dangerous physical conditions.

157.    KMOD and other Class members have suffered losses and incurred expenses as a result of actions of civil authorities that prohibited access to insured premises under the Policy and Class members' policies.

158.    These losses satisfied all requirements to trigger Civil Authority coverage under the Policy and other Class members' policies.

159.    KMOD and the other Class members have complied with all applicable provisions of the policies, including payment of premiums.

160.    Defendants have refused performance under the Policy and other Class members' policies by denying coverage for these losses and expenses. Accordingly, Defendants are in breach of the Policy and other Class members' policies.

161.    As a result of Defendants' breaches of the Policy and other Class members' policies, KMOD and other Class members have suffered actual and substantial damages for which Defendants are liable.

**WHEREFORE**, KMOD seeks compensatory damages resulting from Defendants' breaches of the Policy and other Class members' policies, and seeks all other relief deemed appropriate by this Court.

### COUNT IX: BAD FAITH BREACH OF CONTRACT AND
### THE DUTY OF GOOD FAITH AND FAIR DEALING
### (On behalf of the Civil Authority Coverage Class)

162.    KMOD brings this Count individually and on behalf of the other members of the Civil Authority Coverage Class.

163.    KMOD's Policy, as well as the policies of other Civil Authority Coverage Class members, are insurance contracts under which Defendants were paid premiums in exchange for promises to pay Class members' losses and expenses covered by the policies.

164.    In the Policy and other Class members' policies, Defendants promised to pay for actual loss of business income sustained and necessary extra expenses incurred when a covered cause of loss causes damage to property near the insured premises, the civil authority prohibits access to property near the insured premises, and the civil authority action is taken in response to dangerous physical conditions.

165.    These Covered Causes of Loss were direct, physical and foreseeable causes of loss under the policies and other Class members' policies and they each caused, and/or resulted in, dangerous physical conditions at, and physical injuries to,

KMOD's gyms, other Class members' insured premises and property immediately adjacent to each. The subject Covered Causes of Loss pose a serious risk to and endanger(ed) the public's health, safety and property and rendered KMOD's gyms, other Class members' insured premises and areas within one mile of KMOD's business premises and other Class Members' insured premises, damaged, unusable and/or uninhabitable; thus, prompting the Orders of civil authorities prohibiting access to the same.

166.    These losses and expenses are not excluded from coverage under the Policy. The policies are all-risk policies meaning Covered Causes of Loss are determined by exclusions and the subject Covered Causes of Loss were not excluded under the policies.

167.    Furthermore, these Covered Causes of Loss caused damage to property in the area KMOD's various business premises, and the other Class Members' insured premises, resulting in dangerous physical conditions prompting civil authorities, such as, for example, the State of North Carolina, to issue Orders prohibiting the public's access to the area immediately surrounding the damaged property, including access to KMOD's business premises and other Class Members' insured premises.

168.    Accordingly, these losses satisfied all requirements to trigger Civil Authority coverage under the Policy and other Class members' policies.

169.    KMOD and the other Class members have complied with all applicable provisions of the policies, including payment of premiums.

170.    The actions of the Defendants give rise to a cause of action for bad faith

breach of contract and the duty of good faith and fair dealing as KMOD and other Class members were covered under KMOD's Policy, as well as the policies of other Civil Authority Coverage Class members, and the Defendants have breached the terms of said policies by denying Civil Authority coverage to KMOD and other Class members. Defendants' actions in breaching the terms of KMOD's Policy and the other Class Members' policies, in bad faith, have proximately caused damages to KMOD and other Class members and the damages were reasonably foreseeable to the Defendants.

171.    It appears that the Defendants' conduct was performed because it placed their own financial interests before KMOD's and other Class Members' financial interests.

172.    Further, the actions of the Defendants in denying Civil Authority coverage to KMOD and other Class Members was done so without any legitimate basis or arguable reason and constitute intentional and/or malicious conduct or gross negligence and reckless disregard.

173.    Implied in KMOD's Policy and the other Class Members' policies is a duty of good faith and fair dealing with respect to conduct encompassed by contractual relations. Defendants' conduct as aforesaid breached the duty of good faith and fair dealing which further gives rise to the tort of bad faith for the breach of contract.

174.    Defendants, at all times relevant hereto, owed KMOD and other Class Members a duty to exercise good faith and an obligation to deal fairly with them; however, the denials of Civil Authority coverage by Defendants constituted a bad faith breach of contract and was totally made with only the Defendants' best interests in

mind and in total disregard of the contractual rights of KMOD and other Class Members.

175.     Defendants' bad faith material breach(es) of KMOD's Policy, as well as other Class members' policies, has resulted in actual and substantial damages to KMOD and Civil Authority Coverage Class members, depriving all of the benefit of their bargain, and represents, in addition to warranting contractual damages, incidental damages, and consequential damages, an independent tort entitling KMOD and other Class Members to punitive damages in an amount which will punish the Defendants for their intentional, grossly negligent, and/or reckless conduct as well as to deter Defendants and others from similar misconduct in the future.

**WHEREFORE**, KMOD, both individually and on behalf of other Class members, seeks compensatory damages, contractual damages, incidental damages, consequential damages, and punitive damages, resulting from Defendants' bad faith breach(es) of the Policy and other Class Members' policies and seeks all other relief deemed appropriate by this Court.

## PRAYER FOR RELIEF

**WHEREFORE**, KMOD respectfully requests that the Court enter judgment in its favor and against Defendants, as follows:

A.     Entering an order certifying the proposed Classes, designating KMOD as Class representative for each of the Classes, and appointing KMOD's attorneys as Counsel for the Classes;

B.      Entering declaratory judgments on Counts I, IV, and VII in favor of KMOD and the members of the Business Income Coverage Class, Extended Business Income Coverage Class and Civil Authority Coverage Class as follows:

i.      That all Business Income and Extra Expense, Civil Authority and Extended Business Income losses and expenses incurred and sustained based on the facts and circumstances set forth above are insured and covered losses and expenses under KMOD's and Class members' policies; and

ii.     Defendants are obligated to pay for the full amount of the Business Income and Extra Expense, Civil Authority and Extended Business Income losses and expenses sustained and incurred, and to be sustained and incurred, based on the facts and circumstances set forth above are insured and covered losses and expenses under KMOD's and Class members' policies;

C.      Entering judgments on Counts II, V, and VIII in favor of KMOD and the members of the Business Income Coverage Class, Extended Business Income Coverage Class and Civil Authority Coverage Class, and awarding damages for breach of contract in an amount to be determined at trial;

D.      Entering judgments on Counts III, VI, IX in favor of KMOD and the members of the Business Income Coverage Class, Extended Business Income Coverage Class and Civil Authority Coverage Class, and awarding compensatory damages,

incidental damages, consequential damages, and punitive damages for the Defendants'

bad faith material breach(es) in an amount to be determined at trial;

      E.      An order requiring Defendants to pay both pre- and post-judgment interest

on any amounts awarded; and

      F.      Such other or further relief as may be appropriate.

**DEMAND FOR JURY TRIAL**

The undersigned hereby demands a trial by jury as to all issues so triable.

Date: November 6, 2020

Respectfully submitted,

*/s/ John Roddy*
John Roddy (BBO # 424240)
Elizabeth Ryan (BBO # 549632)
**BAILEY & GLASSER LLP**
176 Federal Street, 5th Floor
Boston, MA 02110
Tel: 617-439-6730
jroddy@baileyglasser.com
eryan@baileyglasser.com

M. Elizabeth Graham
Adam J. Gomez*
Tudor I. Farcas*
**GRANT & EISENHOFER P.A.**
123 Justison Street, Suite 601
Wilmington, DE 19801
Tel: 302-622-7000
egraham@gelaw.com
agomez@gelaw.com
tfarcas@gelaw.com

*Attorneys for Plaintiffs*

*\*Pro Hac Vice* Forthcoming